The next argument is in Duratech v. Bridgeview, Appeal 1157 from 2008. Mr. Lancaster, we'd like to begin as soon as you can be ready. Good morning. Welcome. Please proceed. Thank you. May it please the Court, Counsel. This appeal is focused on a single, straightforward, and not very novel issue. Whether a claim term such as manipulator is so empty of meaning as to require that the presumption against importing means plus function treatment when a patentee chose not to use the term should be overridden. Could you draw on a piece of paper a manipulator? I think I could, Your Honor. One of the things that I would do would be to take a look in the patent and show the manipulators that are displayed. I understand your basic point to be that everyone in this field knows the structure of a manipulator. And it looked to me like it could take any number of structures. So I'm having a hard time following why you think that the word manipulator in this art connotes a particular structure as opposed to innumerable different structures. I don't know that I could agree with innumerable, Your Honor, but we certainly agree that a manipulator could take a number of structures. And we would also point out that in case after case, this group is a group of structures. What would they have in common other than that they will push the bale into the disintegrator, which will then spew it out the side foot for the cattle or whatever the use is? What they would have in common, Your Honor, is what a dictionary definition tells you a manipulator is. Well, in your brief, you quote a dictionary that says it's a device that manipulates. But to say it's a device doesn't help me because devices can come in thousands of highly dissimilar structures. So the fact that the dictionary used the word device doesn't tell me that the word manipulator connotes a particular specific structure. That's not all the dictionaries say, Your Honor. What they say is a mechanical device for remote handling, especially where there is danger associated with the area of handling. That definition fits this device to a tee. We're obviously talking about a bin here with a threshing action where people can't reside. But why isn't that a description of function? It has to allow manipulation safely without the hands of some worker getting chewed up in some piece of machinery. That seems to go to function, not structure. Well, there are a number of reasons why it's not solely function, not purely function, which is the test that this Court enunciated in Phillips. We're quite aware of the test. I don't think there's any serious dispute about what the test is. It's quite a specific question about whether in this art, when an artisan uses the word manipulator, everybody hearing that pictures in their mind a certain piece of machinery, a certain device, a certain structure. If there's evidence that they do, then I'd like to know what it is because it's important for us to get it right. And if there isn't much evidence of that sort, then that's important to know too. I'd like to run through a list of examples that we think answer your question, Your Honor. But let me just mention that there are fully a half dozen cases over the past 12 years, Greenberg, personalized media. We know all those cases, but they fall off different words and different devices. They do, Your Honor, although a number of them describe words that are, if anything, less distinct than manipulator. They describe words like mechanism, detector, circulation means, connector assembly, baffles. A number of those things are, if anything- But a manipulator is a noun and it is not purely functional. That's right. And so why do you force us into a functional definition and the importation of a limitation that it entails? We are arguing as emphatically as we can that means plus function treatment is inappropriate for exactly the reason that you've identified. It is a noun and it's not a purely functional noun. Therefore, means plus function treatment is not appropriate. Is there any testimony, declaration, or other evidence of that sort in this record that would explain to me what the artists in this field picture in their mind when somebody uses the word manipulator? I think there is, Your Honor. And I would mention that in a dissenting opinion in the MIT abacus case, there were two absences in the record that were pointed out. Both of them are present here. One, as Your Honor has just highlighted, is the absence of expert testimony. The other is the absence of any dictionary definition. So let me turn to the point, if I could, that you just raised. I'm asking about testimony and you're telling me about case law. I want to know what does the testimony say and who says it? This court is understandably skeptical of one party producing an expert to support their position. Here, both experts support our position, Your Honor. Here's why. Our expert does so explicitly. Could you just direct us to the specific sites? In the joint appendix, Your Honor, there is a declaration of David Marshak. And when I pronounce that word, you wouldn't necessarily recognize the name. It looks like Major Krizak in A599. And the other side's expert is Dr. Hall. Our expert, Mr. Marshak, his discussion is pretty straightforward. Dr. Hall's is more interesting, perhaps, Dr. Hall being the opposing expert. First of all, what does Mr. Marshak say that supports your position that one skilled in the art would understand what a manipulator was? If you look at the page in the appendix, stamp 621, which happens to be page 22 and at the top, and unfortunately, in this appendix, the first part of that paragraph is cut off. Obviously, it's in the record. But because the term he mentions at the top of the part that we've included here, the term manipulator connotes structure to a person of ordinary skill in the art, I apologize for the first part of that paragraph being cut off in the portion that was reproduced in the appendix. That's our expert. The other side's expert does say in conclusory terms. I mean, that's sort of a conclusory statement. That's fairly conclusory, not as conclusory as the statement I'm about to get to, but you're right, Your Honor. The conclusory statement of the opposing expert is it should be subject to means plus function treatment. It doesn't get any more conclusory than that, but he says something else that is much more meaningful, and that, unfortunately, is in a declaration that is not in the appendix either, obviously contained in the record, a declaration relating to invalidity. What that declaration says is this patent is invalid in part because here's some prior art with manipulators, using that exact phrase. So when Duratex's expert looks at the prior art, he knows a manipulator when he sees it. One of the things that this Court has looked at when it's decided whether means plus function treatment… Instead of the open top shown in the drawing, I had a heavy weight that would press down on the bales and force them into the rotating destructor. According to your definition, that would be a manipulator. In our view, that would present a jury issue, Your Honor, for infringement. What we argued below was that the manipulator was a term that was clear enough, simple enough. We're not talking about rocket circuitry here. We're talking about farm implements. Clear enough, simple enough, that plain meaning was sufficient. For me, the issue isn't a question of complexity of the technology. It's just whether a specific structure comes to mind when somebody says manipulator, as opposed to many different structures that wouldn't look at all like one another. If I could make just one point in this oral argument, it would be that this Court's prior authority has consistently said that is not the test, Your Honor. The test is not whether one structure comes to mind. The test instead is whether the term is purely functional. And the Court has explicitly made clear in case after case that multiple structures can satisfy the test and be sufficiently definite to qualify. You have to deal with the specification, which does use the term means quite often, probably due to the amending out of means plus function clause earlier. How do you deal with that? That precise issue was resolved by this Court in Greenberg, the first of the half dozen cases I'm talking about here. And in that case, this Court observed that the fact that the specification uses the term with means is unpersuasive for the argument that it ought to have means plus function treatment. And in fact, what the Court reasoned is that's part of the evidence, particularly when there's a parallel patent here that does explicitly use means plus function treatment, that the drafter knew what they were doing when they omitted means language. Sometimes there might be cases where you think nobody gave this any thought as to whether it's means plus function or not. And this Court has identified as one test, it's basically a placeholder. If it means the same thing as means for, all right, we might apply means plus function treatment even if that term is not used. Here, the entire structure of these two prosecutions leaves no doubt whatsoever that the applicant was consciously avoiding, attempting to avoid, means plus function treatment. So what? The intent of the applicant doesn't control the decision of the Court. That's correct, Your Honor. But again, if you look at the half dozen decisions of this Court that deal with almost this exact issue, we're very familiar with all of those cases. This issue comes up. What do most of them do? Most of them point to the intent of the applicant. In most of those cases, this exact issue comes up. What could the applicant have intended by this? Well, it may provide some guidance, but I don't think it's ever been viewed as dispositive. Here, Your Honor, we have fully a half dozen reasons why manipulator is sufficiently definite, and we've touched on a number of them, what the experts say, these dictionary definitions, a number of other things. One we haven't touched on is this was not creative work by this patent drafts person. We've supplied the Court a printout indicating that in 25 years before this application was filed, we had some 900 patents contain the word manipulator. Well, how many of them have been challenged on the issue of whether they should be construed as means plus function versus drawn to structure? Needless to say, I cannot answer that question. Tell me about the 900. What happened? There are 900 patents in the 25 years manipulator without using means plus function or comparable language in the claims. And I would submit that if this Court were to hold that manipulator is not sufficiently definite, that if manipulator is a word like element or member or device, which is pretty close to the universe of words that the Court has held are insufficiently definite, a number of the owners of those 900 patents would be quite surprised. Is this the material that starts at 803 of your appendix, 802? Where is the material about the 900 patents in the appendix? Yes, you're right, Your Honor. And the particular page, the page to focus on is page 805. And 805 collects the 1,049 cases with manipulator in the terms, and the next two pages subtract out of those 1,000 cases, and in particular, page 807, the ones in which a word like means appears in the claim. So by process of subtraction, you get to the 900. When you look at the… Wouldn't it logically depend on the particular art? Manipulator might mean something quite specific if you're talking about dentistry versus if you're talking about breaking up bales of hay versus if you're talking about something else. What this Court has emphasized in at least two of these half-dozen cases, the abacus software case and the lighting world case, is that if, as a matter of person of ordinary skill in the art, or, Your Honor, common parlance, either one of those definitions is enough to subtract this from overriding the means plus function treatment. Your Honor, I see that I have eaten well into my three minutes that I hope to reserve. Unless there are other questions right now, I would sit down. Thank you. Mr. Compte, welcome back. Thank you, Your Honor. Probably a little warmer here than in Omaha today. It was 101 yesterday when I left. I stand corrected. It was a lot warmer in Omaha. I made the comment in the long season of the year. One time you were here before, it was extremely cold. Yes, Your Honor, I've been coming here for 20 years. Anyway, please proceed. Well, I can do one better than opposing counsel. I punched up manipulator on the Patent Office website. Quick search from 1976 to the present. There are 10,000-plus patents that use the term manipulator. Whether or not they were means plus function, I don't know. And I'm glad that Mr. Lancaster mentioned the MIT case because you wrote the dissenting opinion. But it does not use the word means. I don't know that. No, no. I mean, the point is this patent does not use the term means. Means is kind of a trigger. When you have a trigger, then you look for the functional language. When you don't have it, you assume it's not there. Why would we vary from that very specific rule? Well, there is a very specific rule. But there is a presumption that the word means is not included in the limitation, that it is not a means plus function limitation under 112.6. What did you do to overcome that presumption? I think the court correctly understood that there was not a specific, definite structure to describe manipulator for performing the function of driving the crop material into the disintegrator. Well, what's the evidence? But what's functional about that? It's a manipulator. There's no functional language involved. For driving the crop material into the disintegrator is certainly functional language, I believe. Well, but of course that is what the manipulator does, but the manipulator itself is a structure. All structures have some function. But this particular does not specifically say what the manipulator is. Well, we look at the specification here in column three. There's two manipulator rollers mounted inside parallel to the flail roller. We're getting an awful lot of very clear. We're in one roller is located on the side, and I haven't heard anything about means yet at all. This is all structure telling us how it rolls the bale counterclockwise, away from the disintegrators, bringing it into contact. That's just not unlike any other pattern. Well, manipulator is not used by itself in any part of the 104 specification. The patentee chose to describe the means for supporting and manipulating as element 24, which included at least two spaced apart rollers, 26, with paddles that defined a disintegration opening above a flail roller. But in addition to the sidewalls that have projections coming out from sidewalls 104 and 106, that's what he called a manipulation means. The term manipulator by itself was not used in any place in these specifications. Column three, line three, at least two manipulator rollers. It's used there independent. It's again in line seven, a cross-section of the manipulator rollers, again used independently. So it is used independently in the patent. I don't think so, Your Honor. I just read the two. It has rollers behind it. It doesn't say at least two manipulators are used. It says two manipulating rollers or manipulator rollers. It doesn't say manipulators by itself, Your Honor. So it's not independently used. Let me ask you a non-farm boy question here. Do all of these devices work simply by rotating the bale of hay longitudinally? There are many, many types of bale disintegrators or bale processors. Being from Nebraska, I've written several patent applications on them. In fact, two of the prior patents to the 104, the Dwyer patents, I wrote. That's a very specific geometric question. Do they all operate by rotating the bale? No, Your Honor. In some cases, the bale remains stationary, and you have a rotor that goes around them like in a tub grinder. In some places, the bale is rotated. The longitudinal axis is up and down rather than horizontal. So the tub grinder will spin it, and there's a rotor underneath that chops the bale. But this case is pretty simple, isn't it? You look at Figure 2. It shows you the manipulator there. It's rotating the bale in one way, and the disintegrator is going in the other, right? The manipulator is 30, right? Figure what, Your Honor? 2. Figure 2? I mean, this has got to be emblazoned in your mind, doesn't it? Oh, yes, it is, Your Honor. I can see it at night. The manipulator includes the sidewalls, the paddles, and the two rollers and such, 26. Okay. Agreed. All of that's the device which is moving the bale in one direction while the disintegrator goes in the other, right? The two rollers, 26, spin the bale, Your Honor, over the disintegrator opening so that the flails can come up through this opening as the bale is rotated. If the bale was not rotated, it would just dig a tunnel up into the bale as far as it could go. But in this operation, the bale has to be rotated, too. So the manipulator manipulates. In combination with the sidewalls, the paddles, and the rollers. If the rollers did not have paddles on them, they would not rotate the bale very efficiently, Your Honor. Well, that sort of suggests that there is rather definite structure used in these kinds of machines. Exactly. And the rollers and the other things talked about in the claim. I agree. In this particular aspect. And my client, Your Honor, has been building and selling bale processors for 28 years. It does not use two spaced apart rollers. It uses a transversely extending slat conveyor mechanism just as in the two Dwyer pads. That's really, though, an infringement issue. Let me ask you this. As I understand it, the way this case was teed up in the district court was, Duratex said, if this limitation is construed as a means plus function limitation, we can underline not establish infringement. Correct? It was Bridgeview who said they could not establish infringement. Oh, I'm sorry. Bridgeview. I apologize. That's right. I got them mixed up. Bridgeview. So on that basis, when the claim was construed this way, summary judgment was entered in favor of your client. We entered into a stipulation dismissing claims and so forth. Now, if we were to conclude that the district court erred in construing this as a 112.6 limitation, there would still be matters to be— leaving aside, I know, that there are validity issues— there would still be the infringement issue to be decided because I think, didn't your client say there was another limitation of the claim that was not infringed? We took that out at the Markman hearing, Your Honor, to the right wall in either the 2600 or the 2850 model. So now, what would happen just on the infringement issue if we were to come to a different claim construction? In other words, we were to say it's not a 112.6 limitation. Does that mean judgment is entered in favor of the plaintiff on infringement, or is there still an infringement issue? There has to be infringement issues, Your Honor, because there's been no testimony. Our expert witness, Dr. Hall, testified that our transversely extending slat conveyor did transforce the prop material into a disintegrator, but it did it in an entirely different way than the rollers— So you're saying even if this is not a 112.6 limitation, it's your view there's still an infringement issue to be decided? Yes, Your Honor. More on the invalidity, Your Honor. Oh, I understand invalidity. Stipulated, for some reason. Yeah, just stipulated for some reason. Now, can you help us with the testimony? Opposing counsel kept talking about Marshak versus Hall and the testimony. Can you direct us to a particular testimony of either of them that you think makes your case? No, I don't think Dr. Hall ever specifically testified in the motion for summary judgment of non-infringement. He simply testified that he viewed the phrase in question as being a means plus function. He did not say in any affidavit that— Well, but that's a legal question. You wouldn't have an expert testifying about the meaning of any language in any claim at any time, or he'd be thrown out of court. I've just done it recently, so I know that happened. I was trying to say that he didn't say that it presided sufficient specific structure to perform the function. How about the other experts? He did, Your Honor, did. You would expect that the expert witness for Bridgewood would state that. Okay, and was there some rebuttal of that testimony? No, Your Honor, that was just the expert witness reports, and I believe that in your dissenting opinion in the MIT case you even talked about that the experts would have opposing views. I could be wrong on that. Maybe I'm getting my cases confused, Your Honor. So your point is that there's no— Well, what's troubling me is you've got the burden here, because you need to overcome the presumption that 112-6 treatment is not applicable here. That's correct, Your Honor. So you say you did overcome that presumption, but I'm struggling to identify what evidence overcame that presumption. I don't know what exactly the court relied upon Judge Webb, but he had prior art patents, brochures, and everything in front of him. He had art drawings. He had the 104 patent. He had the 553 patent in front of him, and he apparently believed that I had overcome that presumption that if the word means is not included in the term, that it was not a means plus function claim. So then logically we would have to review those several patents in order to see whether Judge Webb had an adequate basis for finding the presumption overcome. I think that's correct, Your Honor. Okay. Anything further? I have nothing further. If there are any other questions, I'll be happy to answer them. All right. Thank you. Mr. Lancaster, we'll give you a couple minutes for rebuttal. Thank you. I wonder if I could address the conceitedly hypothetical issue that Judge Schall raised. Yes. If the means plus function decision were overturned and we were returned to the district court, and the main point, I agree incidentally with counsel's statement that the parties would still debate some infringement issues, but the point that I did want to emphasize in response is that whether there is means plus function treatment or not, the district court expressed the view that the definition of the term would be limited to the exact structure disclosed as an embodiment in the patent. And the district court's reasoning is perhaps more apparent in the oral argument transcript than in the opinion itself, because in the opinion he's obviously focused on assuming there is means plus function treatment. But the district court did observe, I'm inclined to construe this limited to the specific embodiment, whether it's means plus function or not. Where's that in the appendix? Do we have that in the appendix? Yes, you have the entire argument. And, in fact, that point is made at least a couple times by the district court. Where's that argument? Where that colloquy, I guess, would be. The transcript begins on 664, Your Honor. Okay. Mr. Lancaster, at one point, Mr. Hall, this is not your expert, the other side's expert, says, a manipulator such as found in the patent is shown in the prior art. Now, he couldn't make that statement, could he, if he didn't know what a manipulator was? I could not possibly agree more, Your Honor. So he, by his own language, is admitting he knows what manipulator means. And that's why this is the unusual case, perhaps, where the two experts agree. Agree. Thank you. I apologize, Judge Schall, for not pointing you more quickly to the exact page. It is in the pages that we've reproduced here. 660, right? 664, you said? It begins on 664, but the statement by the district judge appears more than once, two or three times. But you don't have that exact page. I don't have that exact statement. Thank you very much. All right. We thank both counsel. We'll take the appeal under advisement.